```
                UNITED STATES DISTRICT COURT
                 DISTRICT OF MASSACHUSETTS
_____
                              )
UNITED STATES OF AMERICA      )
                              )
          v.                  )   CRIMINAL NO. 10-10075-PBS
                              )
JUNIOR GRAY,                  )
                              )
          Defendant.          )
_____)
```

**MEMORANDUM AND ORDER**

December 10, 2010

Saris, U.S.D.J.

Defendant Junior Gray moves to suppress twenty bags of crack cocaine removed from between Gray's buttocks during a search at the police station after Gray was arrested for selling crack to an undercover police officer. Gray argues that regardless of whether the search is characterized as a strip search, a visual body cavity search, or a manual body cavity search, it was unconstitutional by virtue of being warrantless and unjustified by reasonable suspicion. An evidentiary hearing was held, at which the searching officer, Officer Stephen Green, testified. I find Officer Green's testimony to be credible. Gray's motion is **DENIED**.

**I. Fact Findings**

On February 27, 2010, Gray sold crack cocaine to a Boston Police Department undercover officer in Boston's South End.

Shortly after the buy was complete, Gray returned to his car, which was parked at a nearby gas station. Noticing the police vehicles converging on the scene, Gray suddenly put his car in reverse and accelerated. His car was moving so quickly that it jumped the curb at the edge of the gas station, stranding him there. Officers then approached the car with guns drawn, and arrested and Mirandized Gray without further incident.

Officer Steven Green, an officer in the District 4 Drug Control Unit, then conducted a search of Gray's person prior to Gray being placed in a police cruiser. Officer Green discovered cash, later determined to be the buy money, in Gray's pants pockets. When he moved his hands towards Gray's buttocks, he noted that Gray clenched his buttocks in response. Green felt an object in the crack area of Gray's buttocks and told his supervising officer that Gray had something secreted there. Gray responded by stating "You don't feel nothing."

Gray was then transported to the D-4 police station, where the supervising officer obtained approval for a strip search. In a private cell, Green explained that Gray would be strip searched and offered Gray the opportunity to remove the drugs himself. When Gray did not respond, Green directed him to remove his clothing one piece at a time. Gray complied until he was dressed only in his undershorts, at which point, in a boxer rebellion, he refused to remove his undershorts himself and told Green to "do your job." Green then removed Gray's undershorts by tugging them

2

to the ground, and attempted to move around Gray to see his backside. Gray turned with him, however, preventing Green from seeing his rear, and Green eventually grabbed Gray by the shoulders and instructed him to stay still. When Green moved around to Gray's rear, he saw an object lodged in Gray's buttocks, informed Gray as much, and requested that Gray remove the object. Gray said nothing, responding only by spreading his buttocks with his hands. When the object did not drop, Gray once again told Green to do his job. Green flicked the dangling object with his finger, and it fell to the ground. It was a plastic bag containing twenty smaller bags of crack cocaine, and the whole bundle was wrapped in a paper towel.

**II. Discussion**

Gray argues that the police lacked justification for this strip search. To constitutionally conduct a strip search without a warrant, police must have reasonable suspicion, specific to the individual, that the individual is concealing contraband. See United States v. Barnes, 506 F.3d 58, 62 (1st Cir. 2007) ("The reasonable suspicion standard governs strip and visual body cavity searches in the arrestee context.") (quoting Swain v. Spinney, 117 F.3d 1, 7 (1st Cir. 2007)) (alterations omitted). For a strip search, the basic fact of the defendant's arrest for a drug crime is enough to create reasonable suspicion that the defendant may be concealing drugs on his person. See Burns v.

3

Loranger, 907 F.2d 233, 238-39 (1st Cir. 1990); Barnes, 506 F.3d at 62 ("The initial strip search for contraband and weapons was clearly justified given Barnes's arrest for a drug trafficking crime."). A visual cavity search requires a "more particularized suspicion that contraband is being concealed." Barnes, 506 F.3d at 62 (citing Swain, 117 F.3d at 7); United States v. Doutre, No. 08-10215, 2009 WL 1211048, at *5 (D. Mass. 2009).

The First Circuit recently characterized the different types of bodily searches as follows: "(1) a simple strip search involving removal of all or virtually all clothes, (2) a visual inspection of genitals or buttocks requiring some change in posture of the body (for example, the subject might be forced to bend over and spread his buttock cheeks), and (3) an actual manual intrusion into such orifices." United States v. McGhee, No. 09-1322, slip op. at 6-7 (1st Cir. Dec. 7, 2010); see also Blackburn v. Snow, 771 F.2d 556, 561 n.3 (1st Cir. 1985) (similarly characterizing the three types of searches). Prior to Gray spreading his buttocks with his hands, the search at issue here was a strip search. See McGhee, slip op. at 7 (describing a strip search as "involv[ing] a view of the naked body in a natural posture"). When Gray spread his buttocks, the search arguably became a visual body cavity search, though the fact that he did so on his own initiative and the fact that he was not asked to bend over make it a grayer question.

Fortunately, it is not a question that requires resolution under these facts, because both types of search were justified by the requisite degree of reasonable suspicion. See McGhee, slip op. at 10 ("Barnes made clear, in what is more than dictum, that an intrusive search of a validly arrested person (whether a strip search or a visual body cavity search) requires only a reasonable basis for supposing that the particular kind of search employed might be fruitful."). Green noted that Gray clenched his buttocks during the original pat-down search, an indicator of the presence of contraband to someone experienced in such matters. Furthermore, Green actually felt the object in Gray's buttocks at the scene of the arrest, which together with Gray's arrest for a drug trafficking crime was more than sufficient to constitute reasonable suspicion for the strip search. See Barnes, 506 F.3d at 62. By the time Green saw Gray from behind, Green had even more grounds for particularized reasonable suspicion, including Gray's reluctance to remove his undershorts and his attempts to prevent Green from viewing his buttocks. Prior to Gray spreading his buttocks with his hands, Green saw a white object between the cheeks of Gray's buttocks. Green had particularized reasonable suspicion from start to finish.

Gray also argues that Green performed a manual body cavity search when he tapped the package in order to liberate it from Gray's buttocks. A manual body cavity search is subject to

heightened requirements, with one court even forbidding the performance of such a search without a warrant absent exigent circumstances. See People v. Hall, 10 N.Y.3d 303, 311 (N.Y. 2008). No manual body cavity search occurred in this case. Green testified that the package was lodged in the cleft of Gray's buttocks. In Green's opinion, the package adhered to Gray's skin when he spread his buttocks because of sweat. Green tapped the package to loosen it; he did not touch Gray at all, let alone invade Gray's anal cavity. See United States v. Broadway, 580 F.Supp.2d 1179, 1185 (D. Colo. 2008) (distinguishing between "buttocks area" and "anus or anal cavity"). None of the cases Gray cites regarding manual body cavity searches suggest that Green's actions were unconstitutional.

## ORDER

Gray's motion to suppress is **DENIED**.


                                        /s/ PATTI B. SARIS
                                        PATTI B. SARIS
                                        United States District Judge